CORCON, INC.,

      Plaintiff,

CHAMPION PAINTING SPECIALTY
SERVICES CORP.,

      Intervenor Plaintiff,

    v.

DELAWARE RIVER PORT AUTHORITY
OF THE COMMONWEALTH OF
PENNSYLVANIA AND THE STATE OF
NEW JERSEY,

      Defendant.

1:21-cv-10146-NLH-SAK

**OPINION**

**APPEARANCES**:

LAURA MARTIN
WILLIAM G. KELLY (*pro hac vice*)
GERBER CIANO KELLY BRADY LLP
150 GRAND STREET
SUITE 610
WHITE PLAINS, NY 10547

    *On behalf of Plaintiff Corcon, Inc.*

MICHAEL A. FERRARA, JR.
THE FERRARA LAW FIRM, LLC
601 LONGWOOD AVENUE, STATE HIGHWAY 38
CHERRY HILL, NJ 08002

MARK E. CEDRONE *(pro hac vice)*
CEDRONE & MANCANO, LLC
230 SOUTH BROAD STREET – SUITE 1100
PHILADELPHIA, PA 19102

    *On behalf of Intervenor Plaintiff Champion Painting*
    *Specialty Services Corp.*

CHRISTOPHER R. GIBSON
WILLIAM J. O'KANE, JR.
WILLIAM L. RYAN
ARCHER & GREINER, P.C.
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033

> *On behalf of Defendant Delaware River Port Authority of the*
> *Commonwealth of Pennsylvania and the State of New Jersey*

**<u>HILLMAN</u>, District Judge**

This matter concerns the third and final phase of a project

to paint the Commodore Barry Bridge, which is operated by

Defendant Delaware River Port Authority of the Commonwealth of

Pennsylvania and the State of New Jersey ("DRPA").[1]  Presently

---

[1] The Commodore Barry Bridge is a five-lane, 14,000 foot span of
the Delaware River between Chester, Pennsylvania and Bridgeport,
New Jersey.  Due to deteriorating lead-based paint on the
bridge, DRPA instituted a project to remove the existing paint
by sand-blasting the bridge to the bare metal and applying three
coats of a non-lead-based protective coating.  DRPA separated
the bridge painting project into three phases.  Phase 1
encompassed the New Jersey approach span of the bridge, Phase 2
entailed painting the Pennsylvania approach span and the
adjacent toll plaza in New Jersey, and Phase 3 completes the
project by painting the bridge's main cantilevered structure in
the middle.  Phase 1 and Phase 2 were completed by Plaintiff
Corcon, Inc.  This Court presided over a complaint against DRPA
brought by an aggrieved bidder with regard to Phase 2.  See
Alpha Painting & Construction Company, Inc. v. Delaware River
Port Authority of the Commonwealth of Pennsylvania, 208 F. Supp.
3d 607, 610 (D.N.J. 2016) ("Alpha I") (finding DRPA's actions to
be arbitrary and capricious, entering a permanent injunction,
and directing that the Phase 2 contract be awarded to Alpha);
see also Alpha Painting & Construction Company, Inc. v. Delaware
River Port Authority of Pennsylvania and New Jersey, 2016 WL
9281362, at *3 (D.N.J. 2016) ("Alpha II") (denying DRPA's Rule
62(c) motion to suspend the injunction pending appeal); Alpha
Painting & Construction Co. Inc. v. Delaware River Port
Authority of Pennsylvania and New Jersey, 853 F.3d 671 (3d Cir.
2017) ("Alpha III") (affirming this Court on all bases except

before the Court is the motion of Champion Painting Specialty Services Corp. to intervene in this action first filed by Corcon, Inc. against DRPA.  Both parties claim to be aggrieved by DRPA's April 5, 2021 decision to re-bid the Phase 3 contract, on which both parties initially bid.  On April 23, 2021, Corcon filed a complaint and request for injunctive relief against DRPA, beating Champion, which also intended to file a complaint and request for injunctive relief, to the courthouse steps. Instead of filing its own action against DRPA, Champion seeks, pursuant to Fed. R. Civ. P. 24, to prosecute its claims against DRPA in this action.  For the reasons expressed at the hearing on June 10, 2021, and for those expressed below, the Court will grant Champion's motion.

## BACKGROUND

On September 15, 2020, DRPA posted an Invitation for Bids ("IFB") on Contract No. CB-32-2016 for Phase 3 to paint the "Cantilever Truss Spans, Barriers and Signal Gantries" of the Commodore Barry Bridge.  All bids were due by November 19, 2020.

---

for the award of the contract to Alpha, vacating the portion of this Court's order directing DRPA to award the contract to Alpha, and remanding the matter so that this Court could fashion a more limited injunction); Alpha Painting & Construction Company, Inc. v. Delaware River Port Authority of Commonwealth of Pennsylvania and New Jersey, 2017 WL 3437781, at *1 (D.N.J. 2017) ("Alpha IV") (finding that a rebid on a new contract for Phase 2 of the Commodore Barry Bridge painting project was consistent with the Third Circuit's mandate, and was the only fair and equitable result for the parties and the public).

Plaintiff Corcon, Inc. ("Corcon") performed the first and second phases of the project, and it submitted a bid to DRPA to secure the contract for the third phase. Three other contractors submitted bids, and the bid of Champion Painting Specialty Services Corp. ("Champion") was the lowest, with a bid of $91,211,075. Corcon's bid of $94,635,451 was the second lowest.[2]

DRPA's procurement manual requires that the award of a contract must be made to the lowest responsive and responsible bidder whose bid meets the requirements and criteria set forth in the IFB unless all bids are rejected or the lowest responsible and responsive bidder is allowed to withdraw its bid. With Champion as the lowest bidder, DRPA commenced with its review of Champion's proposal and qualifications.

According to DRPA's procurement manual:[3]

- "A 'responsive bidder or offeror' is a person who has submitted a bid or proposal which conforms in all material respects to the IFB or RFP."

- "A 'responsible bidder or offeror' is a person who has submitted a responsive bid or proposal and possess the

---

[2] The other two bidders were Ahern Painting Contractors with a bid of $102,886,847, and Allied Painting with a bid of $114,802,420.

[3] See Corcon's complaint, Docket No. 1 at 5-6.

capability to perform the Contract requirements in all respects and the integrity and reliability to assure good faith performance."

- "A bidder cannot modify its bid by removing exceptions to the bid instructions or by supplying missing documentation required by the bid instructions. Once a bid is opened, it cannot be modified."

- "Once a bid is determined to be non-responsive, it may not be made responsive after bid opening regardless of the reason for failure to conform."

DRPA determined that Champion did not answer one of the questions in the IFB. More specifically, SP. 33, Contractor Qualifications, posed ten questions. Question 2 asked:

> 2. Has Contractor completed (as a prime or general Contractor) at least three (3) Contracts that includes blast cleaning and painting of long span bridges over navigable waterways?
>
> Yes      No

(Docket No. 1-8 at 197.)

SP. 33 also provided,

> **A "No" answer to any of questions 1 to 12 will render the firm's bid non-responsive.**[4]

(Id. at 198, emphasis in the original.)

---

[4] Even though the IFB refers to 12 questions, SP. 33 only contains 10 questions. This statement is on a separate page from the questions. (Docket No. 1-8 at 198.)

On December 7, 2020, DRPA's contract manager, Amy Ash, sent Champion a letter, stating in part,

> It has been determined that your bid was substantially responsive; however, you did not supply certain documentation with your submission. In order to rectify this nonconformity, which is not related to any aspect of the price you submitted, please supply the following information to me by 5 PM EST, Wednesday, December 9, 2020:
>
> - Complete responses to the Contractor Qualifications questions in accordance with specification SP.33.
>
> Failure to comply with this request by **5 PM EST, Wednesday, December 9, 2020,** will automatically result in your bid being found _**non-responsive**_, in accordance with the Contract Documents and SP.33.

(Docket No. 1-11 at 1, emphasis in original.) Ash also informed Champion that DRPA had commenced its responsibility review and requested additional financial information. Ash informed Champion that if it did not provide the requested information by 5:00 p.m. on December 9, 2020, it would be deemed not responsible. (Id. at 2.) Ash also pointed out a computation error in one of Champion's line items.[5] (Id.)

On December 8, 2020, Champion submitted the requested

---

[5] Ash explained:

> The total entered on your bid tabulation was $495,000; however, multiplying your unit price of $450.66 by the quantity of 1,040 LF equates to $468,686.40. The effect of this irregularity on your Total Bid amount is negligible. Your original Total Bid is $91,211,075.75. Curing the irregularity in Line Item 31, in accordance with A.7.6., results in a Total Bid price of $91,184,762.15.

(Docket No. 1-11 at 2.)

information to DRPA.  With regard to SP. 33, Question 2,

Champion wrote:

> As per your request, in order to rectify this
> nonconformity, attached please find completed Contractor
> Qualifications questions in accordance with specification
> SP.33. Please note that at the end of the listed questions,
> ten (10) questions in total, the form reads, "A "No" answer
> to any of questions 1 to 12 will render the firm's bid
> non-responsive."  Please advise if there are 2 other
> questions that I am unable to locate on the form, which
> require a response.

(Docket No. 1-12 at 1; Docket No. 18-9 at 1.)  The completed

Contractor Qualifications questions page attached to Champion's

letter is not provided (see id.), but the parties agree that

Champion answered "yes" to SP. 33, Question 1.  Champion also

provided the requested financial information, and it agreed that

it had submitted a miscalculation, with the correct calculation

lowering its bid by $26,312.85.

On December 15, 2020, DRPA held a Qualifications Hearing to

review Champion's qualifications.  On December 18, 2020, Steven

DeVillasanta, Senior Engineer, authored a memorandum that stated

Champion was qualified to perform the work on the Phase 3

contract, and recommended Champion be awarded the contract.

(Docket No. 18-6.)  On December 23, 2020, Corcon through its

counsel sent "Formal Notice of Bid Protest" to DRPA's General

Counsel.  On December 31, 2020, Ash informed Champion of DRPA's

intent to consider the merits of Corcon's Bid Protest:

On December 7, 2020, the DRPA informed your firm, Champion

Specialty Services, that it was determined that your bid
was substantially responsive for DRPA Contract No. CB-32-
2016 (the "Project"). On December 29, 2020, a stay of this
procurement is being placed on hold in light of the protest
letter received from Corcon, Inc.

Corcon, Inc. submitted the attached letter raising
questions regarding your firm's responsibility.

The DRPA is obligated to investigate in an effort to
resolve any questions about your firm's ability to comply
with the Project's requirements for the protection of the
DRPA and the public before we proceed any further with
award of the contract.

As such, please provide your response to Corcon, Inc.'s
letter by 12 PM EST on Friday, January 15, 2021. Your
cooperation is appreciated and, should you have any
questions in connection with this letter, please do not
hesitate to contact me directly.

(Docket No. 18-11.)

Corcon's objection to Champion's bid primarily concerned

Champion's ability to satisfy the SP. 33, Question 2

requirements. Previous to filing its formal protest, and during

DPRA's initial review of Champion's bid and qualification, on

December 4, 2020, David Hatherill of Corcon sent an email to

DRPA's Chief Engineer, Michael Venuto, "informally" stating that

Champion was not qualified to perform the contract. Hatherill

stated, in part:

Corcon has in-depth knowledge of a multitude of large scale
painting contracts issued by various owners within a large
region of the United States as Corcon pursues said work for
its own interest. In that regard Corcon states that it
knows of no single project, never mind the three (3)
projects required by SP-33, whereby Champion was a Prime or
General Contractor of any such painting contract, moreover
not entailing the "blast cleaning and painting of a long

8

span bridge". It is known to Corcon that Champion was a DBE contractor (Champion is not known to be DBE at this time, but remains as an MBE) and secured work as a DBE/MBE subcontractor on several painting projects which is the only type of work to have been performed by Champion, as known by Corcon.

Corcon, since the bid letting of November 19th, has, for its own purposes, made inquiries with various other related entities consisting of, but not limited to, owners, engineering firms, consulting firms, contractors, various union locals, and individuals, well versed in the painting industry for which no such related entity or person could identify any project whereby Champion served as a General or Prime Contractor, but rather only as a subcontractor; thereby, affirming Corcon's position.

(Docket No. 18-7.) Corcon advanced the same position in its December 23, 2020 formal bid protest. (Docket No. 1-16.)

Champion provided its response to Corcon's bid protest on January 14, 2021. (Docket No. 1-17.) Champion contended that Corcon's protest should be rejected because it was untimely. To the extent that Corcon was objecting to the means by which bidders could satisfy the contract's experience requirements, Champion pointed out that DRPA's procurement manual and bidding documents required submission of such protests ten calendar days prior to bid opening, and Corcon's protest was filed well after bid opening.

If Corcon was protesting an award of the contract to Champion, Champion argued that the protest on that basis was also untimely. Section A.15.1.2 of the IFB requires bid protests to be filed within seven days after the protesting

party knew or should have known of some irregularity, and "Corcon bases its sole ground of protest upon information it admits it had even prior to bid opening. Such information being Corcon's familiarity with 'Champion's work in the industry.' . . . DRPA notified the bidders that Champion had the lowest bid on 19 November 2020. Therefore, because Corcon was familiar with Champion's work prior to bid opening, the deadline for Corcon's protest was 27 November 2020. Corcon did not submit its protest until 23 December 2020, making it late." (Docket No. 1-17 at 1-2.)

As for its answer to SP. 33, Question 2, Champion pointed out that the bidding documents did not contain definitions for "prime" or "general contractor." Champion further explained, as it did at the December 15, 2020 meeting with DRPA, that it not only had completed three or more contracts as the prime or general painting contractor, which included blast cleaning and painting of long span bridges over navigable waterways, but it intended to subcontract with Liberty Maintenance, Inc., and Liberty had completed a number of blast cleaning and painting of long span bridges over navigable waterway projects as a prime or general painting contractor. (Id. at 3.)

Champion also referred to DRPA's Request for Contractor Qualifications ("RFQ") for the Phase 3 Contract. Prior to the September 15, 2020 IFB for the Phase 3 project, on January 15,

2020, DRPA advertised a RFQ through its online procurement tool Ariba. To participate in the RFQ process, an interested contractor was required to register with and opt into using Ariba, which provided the contractor access to all information published through Ariba in connection with that contract.

The January 15, 2020 RFQ required:

1. Minimum Experience of the Firm:

The firm seeking to be prequalified should have a minimum of 10 years construction experience working on the following . .

b) Completion or substantial completion as a prime or general contractor of at least three (3) contracts that included the painting of long-span cantilevered truss structures within a tightly constrained and highly utilized facility, while structure remain operational.

(Docket No. 1-25 at 9.)

A question was submitted to DRPA asking, "Is a contractor permitted to use subcontractors on their team to meet the experience requirements in Section IV, Item No. (A)(1)." (Docket No. 18-3 at 10.) DRPA answered "yes." (Id.)

On April 16, 2020, the entire RFQ, including Section IV, Item No. (A)(1), was withdrawn by the DRPA by memorandum communicated to all prospective contractors. A subsequent RFQ was issued on April 17, 2020, but it was withdrawn as well on September 14, 2020.

On September 15, 2020, DRPA issued the IFB which included SP. 33, Question 2. That question concerning "long-span bridges

11

over navigable waterways," however, had not been contained in the prior RFQs.[6]

In addition to considering Corcon's protest and Champion's opposition, DRPA's Operations & Maintenance ("O&M") Committee also requested that DRPA's Chief Engineer, Michael Venuto, conduct an investigation into Champion's qualifications to perform the Phase 3 contract. The O&M Committee also retained an independent Engineering Consultant, AECOM, to conduct an evaluation of Champion's qualifications.

On January 26, 201, AECOM found that the combined experience of Champion and Liberty justified Champion's affirmative answer to SP. 33, Question 2, and AECOM concluded, "Champion has met the requirements of a 'responsible bidder' as set forth by the contract documents and is recommended to be awarded the construction contract for Contract No. CB -32-2016." (Docket No. 18-13 at 7.) On February 2, 2021, Chief Engineer Venuto found, "Champion is qualified to paint the Commodore

---

[6] Champion contends, "[W]hen the DRPA added this requirement to the qualification questions for the IFB for the Phase 3 contract, Corcon knew that Champion was the only other potentially qualified bidder that was a Minority and Veteran Owned Painting Contractor and as such, could fulfill the MBE requirement of the Phase 3 Contract with its own labor, materials, and equipment, rather than subcontracting 7% or about $6.5 million of painting or other work as mandated by contract specifications to other minority-owned businesses. Thus, Corcon knew that Champion was the only other potential bidder with sufficient bonding capacity and other resources who could potentially underbid Corcon." (Docket No. 18 at 8-9.)

Barry Bridge.  Therefore, I concur with the Project Team and
AECOM that Champion is the lowest, responsive and responsible
bidder and that the staff should proceed with recommending to
the DRPA's Board of Commissioners that Champion be awarded
Contract CB-32-2016."  (Docket No. 18-14 at 2.)

On February 10, 2021, DRPA's General Counsel sent a
Certified Letter to Corcon's counsel enclosing Chief Engineer
Venuto's memo and stating, "this shall be notice that
DRPA determines that Champion satisfies the IFB's requirements,
is sufficiently qualified per the IFB's terms, and denies
Corcon's Protest on the merits."  (Docket No. 18-15 at 1.)
DRPA's letter also stated that Corcon's protest was untimely.
(Id. at 2.)  The letter further instructed:

> IFB Section A.15.5 provides that within ten (10) business
> days, a Protester dissatisfied with this determination may
> file with this office a written appeal to the Operations &
> Maintenance Committee, setting forth the reasons for
> disagreement and, if desired, requesting a personal
> appearance before the Committee at its next regularly
> scheduled meeting (in this case the Committee is scheduled
> to next meet on March 2, 2021, at 9:00 AM, via Zoom).

(Id. at 2.)

On February 22, 2021, Corcon filed a bid protest appeal,
and on March 8, 2021, Champion submitted a response.  On April
1, 2021, the O&M Committee met virtually to consider Corcon's
bid protest appeal.  It adjourned the meeting and went into
Executive Session to deliberate.  On April 5, 2021, DRPA issued

its decision, which provided in relevant part:

> Based on its review of the information provided and as demonstrated by the polar opposite positions advanced by Champion and Corcon, it is apparent to the Committee that, unfortunately, there existed a lack of clarity in the Invitation for Bid regarding certain key terms and the required qualifications. When this occurs, as is sometimes the case through no malintent or improper action on anyone's part, the Committee's primary concern becomes one of fairness to all those involved. A fair and competitive process is fundamental to the DRPA's procurement procedures and the public's best interest. The concern over fairness does not just relate to the companies that submitted bids, like the four companies that did so here, but also for companies that may have elected <u>not</u> to have submitted bids but otherwise may have done so if the documents had been clearer. The Committee finds this latter point, raised by Corcon's counsel during his presentation, particularly compelling.

> The recommendation by AECOM as it concerned Champion's bid is also noted. The Committee concurs with the evaluator that Champion did not meet, on its own, the specific IFB requirement relative to having served as a general or prime contractor on three prior projects. However, we have reached a different conclusion than AECOM based on a review of the IFB language, all the submissions and the totality of the circumstances. Specifically, the Committee has concluded that parties appear to have not been sufficiently apprised of what qualifications were required and whether or not subcontractors' qualifications could be utilized in satisfying the required qualifications. Questions and answers exchanged in connection with a prior and withdrawn RFQ should not be utilized unless expressly referenced or incorporated into the IFB. This created a significant risk of confusion which, in our view, clearly had an effect on the fairness and competitive nature of the bidding process here. The Committee can appreciate how Champion could have understood such prior questions and answers were applicable to the IFB. The Committee, however, equally appreciates how others, especially those not involved in the RFQ process, may not have had such an understanding.

> The Committee would have unquestionably preferred that the project move forward immediately. However, it is not

willing to award a contract at the risk of being unfair to any party or jeopardizing the public's best interest.

As such, it is the Committee's decision that, per Section A.15.6, all bids are hereby rejected and that rebidding the project is the only fair, reasonable, and appropriate outcome to all those involved under the circumstances presented.  The Committee recommends that the DRPA proceed as expeditiously as possible with any required revisions to the bidding documents in an effort to ensure that all future potential bidders are on the same and equal playing field. The Committee hopes that this project can be rebid promptly so that the work can commence in the near future.

Before concluding, the Committee does take a moment to express its concern with the direct communication from Corcon's President/CEO, David Hatherill to the DRPA's Chief Engineer in violation of the terms of the IFB- Section A.2.2.  While this violation would give rise to, in the Committee's view, the right to reject Corcon's bid - the Committee need not reach that issue (nor several other issues considered based on the submissions and presentations) in light of its decision to rebid.  However, all future bidders are on notice that violations of this nature will not be tolerated by the DRPA or this Committee.

(Docket No. 1-24.)

On April 23, 2021, Corcon filed the instant action, asserting numerous claims against DRPA, and it has requested equitable relief and monetary damages.  Corcon argues that DRPA's actions were arbitrary and capricious in many respects,[7]

---

[7] As this Court explained in Alpha I, "[I]t is inherent in a case of this kind that it is likely that there will be a factual dispute with respect to the ultimate question of whether a bidder is the lowest qualified and responsible bidder."  Allied Painting, Inc. v. Delaware River Port Auth. of Pennsylvania & New Jersey, 185 F. App'x 150, 151 (3d Cir. 2006).  This is because the "resolution of the question requires an agency seeking bids to exercise its judgment in a way that ordinarily it cannot do with mathematical precision."  Id.  Accordingly, a

but primarily with regard to (1) DRPA not finding Champion's bid to be non-responsive for failing to answer SP. 33, Question 2; (2) DRPA failing to declare Champion as not responsible because it could not independently meet the requirements of SP. 33, Question 1; (3) DRPA failing to find that the express terms of the IFB demanded that Corcon, as the lowest responsive and responsible bidder, be awarded the contract; and (4) DRPA deciding to re-bid the contract instead of awarding it to Corcon. (Docket No. 1 generally, and at 22-25.)

For its request for injunctive relief, Corcon asks that this Court enjoin DRPA from rebidding the Phase 3 contract, declare DRPA's Operations and Maintenance Committee's decision on Corcon's bid protest appeal to be null, void and of no effect, and order DRPA to proceed with the procurement process as outlined in the IFB for Contract NO. CB-32-2016 and the DRPA's Procurement Manual to award Contract No. CB-32-2016 to the lowest, responsible and responsive bidder. (Docket No. 1-31 at 2.)

Champion's proposed intervenor complaint also seeks injunctive relief for DRPA's alleged arbitrary and capricious

---

decision of DRPA may be overturned "only if its decision was the product of 'an abuse of discretion or was arbitrary, unreasonable, or irrational.'" Id. (quoting Princeton Combustion Research Labs. v. McCarthy, 674 F.2d 1016, 1021-22 (3d Cir. 1982)).

actions.[8]  Like Corcon, Champion asks this Court to enjoin DRPA
from re-bidding the contract.  In contrast to Corcon, Champion
argues that DRPA's actions were arbitrary and capricious when it
(1) rejected Champion's lowest responsible and responsive bid;
(2) considered Corcon's bid protest appeal; and (3) decided to
re-bid the contract rather than award it to Champion.  Champion
also seeks to disqualify Corcon from consideration for the Phase
3 contract, either by awarding the contract to Champion, or by
preventing Corcon from re-bidding on the contact.  (Docket No.
18.)

Champion states that it has sought to intervene in this
action rather than institute its own action to not only protect
its interests but to protect the efficiency of the judicial
process by avoiding piecemeal appeals and duplicate actions,
which serves the public interest.  Corcon has opposed Champion's
motion to intervene, arguing that Champion is not a necessary
party, it does not have a protectable interest, and Champion is
not likely to be successful on the merits of its claims.  DRPA

---

[8] Champion states that it has limited its complaint in
intervention to the claims for injunctive relief that are
inextricably linked to the claims in Corcon's complaint.
(Docket No. 18 at 17 n.5.)  Champion requests that if this Court
determines that litigating all claims – both equitable and
monetary - among Corcon, DRPA, and Champion via intervention is
appropriate, then Champion requests leave to file an Amended
Complaint in Intervention.  (Id.)  See, infra note 11, regarding
procedure after the granting the motion of a party to intervene.

has not filed an opposition to Champion's motion, and during oral argument, counsel for DRPA represented that it consented to Champion's intervention.

**DISCUSSION**

**A.    Subject matter jurisdiction**

Plaintiff Corcon is a corporation organized under the laws of the State of Ohio, with its principal place of business in Lowellville, Ohio.  Intervenor Plaintiff Champion is a corporation organized under the laws of the State of Florida, with its principal place of business in Fort Lauderdale, Florida.  Defendant DRPA is a public entity authorized by Congress and created by an interstate compact between the State of New Jersey and the Commonwealth of Pennsylvania ("DRPA Compact"), enabled by N.J.S.A. 32:3-1 et seq. and Pa. Cons. Stat. 3503 to 3509, for the purpose of developing and maintaining bridges and port facilities between the two states, including the Ben Franklin, Walt Whitman, Commodore Barry, and Betsy Ross bridges.  DRPA has its principal place of business at One Port Center, 2 Riverside Drive, Camden, New Jersey 08121.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and cost, and there exists

complete diversity between the parties to this dispute.[9]

**B.    Analysis**

Federal Civil Procedure Rule 24 governs Champion's motion to intervene.  Rule 24 provides,

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
> > (1) In General. On timely motion, the court may permit anyone to intervene who:
> >
> > (A) is given a conditional right to intervene by a federal statute; or
> >
> > (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> . . .

---

[9] In <u>Alpha I</u>, this Court noted that it had previously questioned whether subject matter jurisdiction may be exercised over DRPA pursuant to 28 U.S.C. § 1331, when no diversity of citizenship exists between the parties.  <u>See</u> <u>Delaware River Port Authority v. Fraternal Order of Police Penn-Jersey Lodge No. 30</u>, Civil Action 16-1285 (NLH/JS), Docket No. 4.  Such issues turn on whether the case implicates the interstate compact itself, which perforce raises a federal question, or merely issues of state or common law which do not raise possible conflicts with or interpretations of the compact.  As in <u>Alpha I</u>, the Court does not need to address that issue in this case because jurisdiction under § 1332 is satisfied.

> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

> (c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24.

### (a)  Intervention of right

A party has a right to intervene under Rule 24(a) if it can show (1) that it has filed a timely motion; (2) it has a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (4) that its interest is not adequately represented by the existing parties to the litigation.  Commonwealth of Pennsylvania v. President United States of America, 888 F.3d 52, 57 (3d Cir. 2018) (quoting Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998)) (quotations omitted).

### 1.  *Whether Champion timely filed its motion to intervene*

Champion learned that Corcon had commenced its action on April 30, 2021, when the DRPA notified Champion.  Champion filed its motion to intervene on May 7, 2021.  Champion's motion to intervene was timely filed, which Corcon does not contest.

## 2. *Whether Champion has sufficient interest in the litigation*

"To meet this prong, the Supreme Court has held that an applicant must assert an interest that is significantly protectable." Commonwealth of Pennsylvania, 888 F.3d at 57–58 (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)) (quotations omitted). The Third Circuit has "interpreted this to mean a cognizable legal interest, and not simply an interest of a general and indefinite character." Id. (citation omitted). "An applicant must therefore demonstrate that its interest is specific to it, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." Id. (quotations, citation and alterations omitted). "Given these standards, it is not surprising that the facts assume overwhelming importance in each decision." Id.

Champion readily meets this first prong of the Rule 24(a) analysis. Corcon seeks to stop DRPA from rebidding the Phase 3 contract because that decision was arbitrary and capricious, and it requests that DRPA follow its rules and regulations and award the contract to the lowest responsive and responsible bidder, which Corcon contends it is. Champion seeks the same relief for itself. Just as Corcon has a protectable interest in its claims against DRPA, Champion also has a specific, defined interest in the Phase 3 contract, and any relief awarded in this action on

Corcon's claims will substantially affect Champion in a concrete way.  Thus, Champion has a sufficient interest in this litigation to satisfy this element of the intervention-as-of-right analysis.[10]  See, e.g., Kleissler, 157 F.3d at 973 (in a

---

[10] Champion's motion to intervene presents a different procedural posture from Corcon's position in Alpha v. DRPA.  There, DRPA argued that the Third Circuit should vacate this Court's decision in Alpha I because Corcon, who was not joined in the action, was a necessary party under Federal Rule of Civil Procedure 19(a)(1)(B)(i).  The Third Circuit rejected DRPA's argument, finding that Corcon was not a necessary party because it did not have a protectable interest relating to the dispute that would have necessitated its joinder.  Specifically, the Third Circuit held that, in the context of a due process claim, "DRPA's guidelines do not vest any property right in a DRPA awardee" until the until the contract is fully executed.  Alpha III, 853 F.3d at 688.  The Third Circuit also held that Corcon's interests were fully represented by DRPA, which zealously sought to uphold its designation of Corcon as the lowest responsible bidder.  Id.

In a different case, the Third Circuit explained the distinction between Rule 19 and Rule 24:

> Intervention is distinct from joinder, a way that existing parties can bring a third party into a lawsuit.  Required joinder ensures the presence of a necessary party.  Fed. R. Civ. P. 19.  Permissive joinder consolidates parties who might otherwise be involved in related but distinct actions.  Id. R. 20.  Either way, joinder is begun by the existing parties or the court.  Intervention, by contrast, involves a nonparty's motion to enter a suit to protect its interests, whether or not the existing parties want its company.  Id. R. 24(a)–(b).

In re Plavix Marketing, Sales Practices and Products Liability Litigation (No. II), 974 F.3d 228, 234 (3d Cir. 2020).

Here, Corcon has opposed Champion's motion to intervene arguing that Champion is not a necessary party and its claims will not be successful on the merits.  As set forth above, those arguments are misplaced in the context of a Rule 24 motion.

suit brought by private parties seeking to halt logging activities, finding that two lumber companies that had not received contracts under the projects challenged by plaintiffs had a protectable interest under Rule 24(a) because (1) they were "very dependent on timber contracts with the [Service] to cut timber" in the Forest and "their continued existence may be jeopardized" if plaintiffs prevail, (2) like the other timber companies, they have a considerable stake in ensuring that the landscape corridor approach to forest management remained in place, (3) Congress had designated the national forests for multiple uses, but it had also emphasized that those uses are "not in derogation of" timber harvesting, and this statement of policy, when viewed in light of the district court's finding

---

Corcon also argues that Champion's attempt to intervene should be denied because it does not have a protectable property interest since it was non-responsive and not responsible. This argument fails for two reasons: (1) whether Champion was non-responsive and not responsible is currently a disputed fact, and (2) a "property interest" in the context of a Rule 19 motion is different from "an interest relating to the property or transaction that is the subject of the action" under Rule 24. See Alpha III, 853 F.3d at 688 (citing Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority, 103 F.3d 1165, 1178 (3d Cir. 1997)) ("Independent [] alleges that the Authority deprived it of property without procedural or substantive due process when it disqualified Independent and rejected its bids" for several state contracts, which must be awarded to the lowest responsible bidder, and finding, "Since Independent's bids were never accepted, it never acquired an enforceable right with respect to the contract being awarded. It, therefore, has not been deprived of a property interest that warrants procedural due process protection."); see also Kleissler, 157 F.3d at 973, discussed *infra*.

that a victory for plaintiffs could destroy their business, satisfied the Third Circuit that those two logging companies had a substantial interest, directly related to and threatened by the litigation, that met the requirements of Rule 24(a)).

### 3. *Whether Champion faces a threat that the interest will be impaired or affected by the disposition of the action*

"To meet this requirement, an applicant must demonstrate that its legal interests may be affected or impaired as a practical matter by the disposition of the action. It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." Commonwealth of Pennsylvania, 888 F.3d at 57–58 (quotations, citation and alterations omitted). The focus is on the "practical consequences of the litigation," and a court "may consider any significant legal effect on the applicant's interest, including a decision's stare decisis effect or a proposed remedy's impact on the applicant for intervention." Id. The Third Circuit also holds a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." Id.

The resolution of Corcon's claims regarding the propriety of DRPA's actions and its requested relief poses a tangible threat to Champion's interest in its own claims against DRPA and its interest in the Phase 3 contract. Simply stated, without

24

Champion's participation, if either Corcon or DRPA prevailed, Champion would lose on its claims by default, which would cause Champion to mount a collateral attack to any judgment entered here. The third prong of the Rule 24(a) analysis is clearly met.

**4.** *Whether Champion's interest is not adequately represented by the existing parties to the litigation*

"An applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." Id. (citations and quotations omitted). "This burden is generally treated as minimal and requires the applicant to show that representation of his interest may be inadequate." Id.

Neither Corcon's nor DRPA's interests align with Champion's. Although both Corcon and Champion agree on their view that DRPA acted in an arbitrary and capricious manner in determining to cancel all bids and re-bid the contract, Corcon and Champion view DRPA's actions relative to the other in diametrically opposing ways, and each effectively seeks the award of the contract to itself. Additionally, it is obvious that DRPA cannot adequately represent Champion's interests. The fourth prong of the Rule 24(a) analysis is satisfied.

Consequently, "with an eye toward the 'elasticity' and

'flexibility' that Rule 24 contemplates," and considering that
"a major premise of intervention" is "the protection of third
parties affected by pending litigation," Kleissler, 157 F.3d at
970, 971, the Court finds that Champion has a right to intervene
under Rule 24(a).

    **(b)   Permissive intervention**

Permissive intervention is available when an applicant "has
a claim or defense that shares with the main action a common
question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In
contrast to intervention of right, the Third Circuit is "more
reluctant to intrude into the highly discretionary decision of
whether to grant permissive intervention." Islamic Society of
Basking Ridge v. Township of Bernards, 681 F. App'x 110, 112 (3d
Cir. 2017) (quoting Liberty Mut. Ins. Co. v. Treesdale, Inc.,
419 F.3d 216, 227 (3d Cir. 2005)).

There is no question that Champion's claims share the same
questions of fact and law with Corcon's action. Moreover,
Champion's addition to this case would not cause undue delay or
prejudice to Corcon's and DRPA's rights. See Fed. R. Civ. P.
24(b)(3). To the contrary, litigating these three parties'
positions in two separate actions most likely would result in
unnecessary delay and, as found above, prejudice to Corcon and
DRPA by way of Champion's inevitable collateral attack on any
decision here. Champion's intervention in this case is proper

26

under Rule 24(b) as well.

**CONCLUSION**

"What distinguishes intervention from [] other methods of adding new parties is that it requires action by an outside party who seeks a seat at the table." In re Plavix Marketing, 974 F.3d at 234 (citing 7C Charles Alan Wright et al., Federal Practice and Procedure § 1901, at 257-60 (3d ed. 2007)). For the foregoing reasons, and for those expressed at the June 10, 2021 hearing, Champion is entitled to a seat at this table. The Court will grant Champion's motion to intervene, and the parties will proceed accordingly.[11]

An appropriate Order will be entered.


Date:   June 28, 2021               s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[11] During the hearing, counsel queried about the next steps following Champion's entrance to this case. Although counsel should endeavor to determine and follow the proper procedures, the Court notes that service of the intervenor complaint in accordance with Rule 5(b) on the attorneys for those parties who have appeared is sufficient. 7C Wright & Miller Fed. Prac. & Proc. Civ. § 1919 (3d ed.). Additionally, "the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties," and "the intervenor is entitled to litigate fully on the merits once intervention has been granted." Id. § 1920. With regard to Champion's ability to assert additional claims or counterclaims, the parties may wish to consult id. § 1921, Assertion of Additional Claims by Intervenor.