[ECF Nos. 73, 74, 82]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **CHAMPION PAINTING SPECIALTY SERVICES CORP.,**<br><br>Plaintiffs,<br><br>v.<br><br>**DELAWARE RIVER PORT AUTHORITY OF THE COMMONWEALTH OF PENNSYLVANIA AND THE STATE OF NEW JERSEY et al.,**<br><br>Defendants. | Civil No. 21-10146 (NLH/SAK) |

## OPINION AND ORDER

This matter is before the Court upon the applications of (1) Plaintiff Champion Painting Specialty Services Corp. ("Champion") (hereinafter "Plaintiff") for an order compelling the depositions of members of the Delaware River Port Authority's Board of Commissioners' Operations & Maintenance Committee ("O&M Committee") [ECF No. 73], and (2) Defendant Delaware River Port Authority of the Commonwealth of Pennsylvania and State of New Jersey ("DRPA") (hereinafter "Defendant") for a protective order precluding: (a) the depositions of any DRPA Commissioners, and (b) the discovery of Defendant's information protected by the deliberative process privilege, the attorney-client privilege, and the attorney work product doctrine [ECF No. 74]. The Court conducted oral arguments on February 18, 2022. The Court also conducted an *in-camera* review of an "Executive Summary" prepared by DRPA's legal counsel

regarding the bid protest at issue in this case.[1] For the reasons set forth herein, it is hereby Ordered that Plaintiff's application is **DENIED**, and Defendant's application is **GRANTED**.

## BACKGROUND

Since the parties are familiar with the facts of this case, the Court will only recite the facts relevant to the present applications. Plaintiff's intervener complaint stems from a dispute with Defendant's O&M Committee's decision to rebid Phase 3 of a Commodore Barry Bridge Painting Contract ("Contract"). *See* Pl.'s Compl. [ECF No. 18]. Initially, Plaintiff was awarded the Contract because it presented the DRPA with the lowest bid. *Id*. at 1. However, on December 23, 2020, Corcon, Inc. ("Corcon")—the former plaintiff in this litigation and the Contract recipient for Phases 1 and 2 of the bridge repainting project—filed a Bid Protest with the DRPA. *Id*. at 11-12, ¶ 29. Corcon alleged that Champion was non-compliant with the requirements of a special provision in the Contract known as SP.33[2]. *Id*. at 9-12, ¶¶ 25-30. In response, the DRPA commenced an investigation to review Plaintiff's qualifications to complete the Contract. *Id*. at 12-14, ¶ 31-33. As a part of that investigation, the DRPA obtained a review of Plaintiff's qualifications from an independent engineering consultant, AECOM, and DRPA's Chief Engineer, Michael P. Venuto. *Id*. Both investigations determined that Plaintiff, with its project team and subcontractors, was the "lowest, responsive, and reasonable bidder" and both supported the award of the Contract to Plaintiff. *See* AECOM Letter dated Jan. 26, 2021 [ECF No. 18-13]; DRPA Venuto Letter dated Feb. 2, 2021 [ECF No. 18-14]. On February 10, 2021, DRPA's counsel sent a letter to Corcon explaining these findings. *See* Pl.'s Compl. at 14, ¶ 34.

---

[1] At the Court's request, Defendant provided a copy of the legal memorandum titled Executive Summary referenced in Paragraph 5 of the Certification of William L. Ryan, Esquire ("Ryan Cert.") [ECF No. 74-2], for an *in-camera* review.

[2] Section SP.33 reads: "Has Contractor completed (as a prime or general contractor) at least three (3) contracts that include blast cleaning and painting of long span bridges over navigable waterways?" *See* Pl.'s Compl. at 8, ¶ 20.

On February 22, 2021, Corcon filed a Bid Protest Appeal. *Id*., ¶ 36.  The DRPA accepted and reviewed written submissions from all interested parties and heard oral presentations regarding the appeal on March 2, 2021. *See* Def.'s Opp'n at 10. [ECF No. 74].  During oral presentations, Corcon argued, *inter alia*, that it would be unfair to allow the use of subcontractor qualifications to satisfy SP.33 because any clarification explaining that option was withdrawn. *Id*.  Following the oral presentations, the DRPA once again accepted and reviewed supplemental written submissions from all interested parties. *Id*.  The O&M Committee reconvened on April 1, 2021. *Id*. at 11. During the meeting, the O&M Committee transitioned from an open to an executive session between 9:10 a.m. and 9:33 a.m., to "confer with legal counsel." *See* Ex. A to Letter Application [ECF No. 73-1 at 2].  During the executive session, DRPA's General Counsel provided the O&M Committee with a copy of a memorandum prepared by DRPA legal counsel, addressing issues and arguments raised by Champion and Corcon during the Bid Protest Appeal process.  *See* Ryan Cert. at 2-3, ¶¶ 5-7 [ECF No. 74-2].  John Hanson, DRPA Chief Executive Officer and participant in the executive session, certified that during the executive session, legal advice was presented in the presence of both the O&M Committee members and senior members of the DRPA staff involved with the bid protest. *See* Cert. of John T. Hanson at 5-6, ¶ 13 [ECF No. 74-1].  Upon returning to open session, the O&M Committee explained that it decided to reject all bids, and rebid the Contract. *See* Ex. A to Letter Application.  A few days later, on April 5, 2021, the O&M Committee issued a written decision justifying its determination to rebid the Contract. *See* Ex. B to Letter Application [ECF. No. 73-2].  Thereafter, this litigation ensued.

Plaintiff now seeks an order compelling the deposition of the O&M Committee members. *See* Letter Application at 6-7 [ECF No. 73].  Plaintiff argues that neither the *Morgan* doctrine, nor the deliberative process privilege prevents the depositions of the O&M Committee members about

3

the Committee's decision to reject all bids. *See* Pl.'s Reply [ECF No. 82].[3] Plaintiff asserts that "there can be no witnesses better suited than the O&M Committee [members] to provide information, support, and justification" for the decision to "reject all bids, including Champion's lowest and responsible bid." *See* Letter Application at 14. Plaintiff contends that the Committee members possess superior or unique information on the issues being litigated that cannot be obtained by a less intrusive method. *Id.* at 14-15.

Plaintiff further argues that the defendant cannot broadly apply, nor are they protected by the attorney-client privilege or attorney work product doctrine. *Id.* at 15-16. Plaintiff asserts that additional facts are necessary for evaluating these protections. *Id.* at 16. Plaintiff argues that "to the extent the DRPA suggest that its April 1, 2021 rejection of all bids decision was based on the advice of counsel, that alone does not shield inquiry into the factual bases of the decision since the privilege applies to communications not facts." *Id.* at 16-17 (internal citation omitted). Thus, Plaintiff argues, it should be permitted to depose O&M Committee members to discover the facts upon which the Committee based its decision. *Id.* at 17.

Defendant argues that the O&M Committee members, as the highest-ranking officials in the DRPA, are protected by the *Morgan* doctrine. *See* Def.'s Opp'n [ECF No. 74]. Defendant also contends that Plaintiff should not be allowed to depose the O&M Committee, or any DRPA employee, about the executive session because it was convened to seek legal advice from counsel, and to deliberate confidentiality. *Id*. at 18. Defendant argues that pre-decisional deliberations are not relevant and are protected from disclosure by the deliberative process privilege. *Id*. at 19-20, 25-28. Defendant further argues that the executive session is protected by the attorney-client

---

[3] Plaintiff originally argued against the application of the Apex Doctrine based on Defendant's assertion of that privilege. However, during oral argument, Defendant confirmed that they would not rely on the Apex Doctrine. As such, the Apex Doctrine will not be addressed.

4

privilege.  *Id*. at 30-31.  Lastly, Defendant argues that any document prepared by, or on behalf of, an attorney should be precluded from discovery as attorney work product.  *Id*. at 35.

**DISCUSSION**

The attorney-client privilege is recognized as "the oldest of the privileges for confidential communications known to the common law." *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 84 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  *Upjohn Co. v. United States*, 449 U.S. at 389.  The privilege protects communications between attorneys and clients from compelled disclosure. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007).  Protected communications can be written as well as oral. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).

The attorney-client privilege applies to any communication that satisfies the following elements: it must be "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id*. (quoting *Restatement (Third) of the Law Governing Lawyers § 68 (2000)*)).  "Privileged persons" include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation. *Restatement (Third) of the Law Governing Lawyers § 70 (2000)*; *see also United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 965 (3d Cir. 1988) (stating that "the key is whether the person asserting the privilege had a professional consultation with an attorney, who acts or advises as such").  Nonetheless, the facts underlying any given communication remain discoverable. *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008).

The attorney-client privilege also does not apply to communications which relate to business rather than legal matters. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990). The Court must therefore inquire as to whether "the communication is designed to meet problems which can fairly be characterized as predominately legal." *Id*. at 98-99 (citations omitted). Stated differently, "the claimant must demonstrate that the communication would not have been made but for the client's need for legal advice or services." *Id*. at 99 (citation omitted). Moreover, "relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

Here, the Court finds that the written and oral communications made and/or considered during the April 1, 2021 executive session by the O&M Committee members, DRPA staff, and DRPA's counsel, are protected by the attorney-client privilege. The Court finds that the communications related to the Committee's decision to reject all bids and rebid the contract, and that the communications were predominantly legal. The Court reached this determination after hearing oral arguments, reviewing the record, and conducting an *in-camera* review of the Executive Summary distributed to the O&M Committee at the executive session. The minutes from the April 1, 2021 meeting indicate the O&M Committee transitioned from an open public session to an executive session to "allow the Committee to confer with legal counsel." Hanson also certified that at the executive session, legal advice was presented in the presence of both the O&M Committee members and senior members of the DRPA staff involved with the bid protest. The Court also finds that Defendant has not waived the attorney-client privilege. Plaintiff has presented no evidence to indicate that the attorney-client privilege was waived by the attendance during the executive session of persons other than senior DRPA personnel involved in the bid

protest and legal counsel.  The Court further notes that the facts forming the basis of the legal discussions and of the Committee's decision have been disclosed to Plaintiff.  A written decision explaining the rationales for the O&M Committee's decision was issued on April 5, 2021.

Accordingly, Defendant's request for a protective order prohibiting the depositions of O&M Committee members regarding oral and written communications considered in the executive session is GRANTED.  Defendant's request for a protective order prohibiting the discovery of the legal memorandum provided to the O&M Committee at the April 1, 2021 executive session of the Bid Protest Appeal meeting is GRANTED.  Plaintiff's request is therefore DENIED.

To the extent that the Court has found that oral and written communications made or considered during the April 1, 2021 executive session are protected by the attorney-client privilege, the Court will not address the applicability of the *Morgan* doctrine, the deliberative process privilege, or the work product doctrine.

**IT IS THEREFORE ORDERED** this **25th** day of **April 2022**, that Plaintiff's letter application [ECF No. 73] seeking to compel the depositions of DRPA's O&M Committee members is **DENIED**; it is further

**ORDERED** that Defendant's request for a protective order [ECF No. 74] prohibiting the depositions of O&M Committee members regarding oral and written communications considered in the executive session is **GRANTED**; it is further

**ORDERED** that Defendant's request for a protective order [ECF No. 74] prohibiting the discovery of the legal memorandum provided to the O&M Committee at the April 1, 2021 executive session of the Bid Protest Appeal meeting is **GRANTED**.

  s/ Sharon A. King
 SHARON A. KING
 United States Magistrate Judge