**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

CHAMPION PAINTING SPECIALTY
SERVICES CORP.

          Plaintiff,

   v.

DELAWARE RIVER PORT AUTHORITY
OF THE COMMONWEALTH OF
PENNSYLVANIA AND THE STATE OF
NEW JERSEY

         Defendant.

1:21-cv-10146-NLH-SAK

OPINION

---

Appearances:

MICHAEL A. FERRARA, JR.
THE FERRARA LAW FIRM
601 LONGWOOD AVE.
CHERRY HILL, N.J. 08002

RICHARD H. MAURER
FLAMM WALTON HEIMBACH
COMMERCE CENTER
5050 W TILGHMAN ST., STE 410
ALLENTOWN, PA.

     *On behalf of Plaintiff*

CHRISTOPHER R. GIBSON
WILLIAM J. O'KANE, JR.
WILLIAM L. RYAN
ARCHER & GREINER, P.C.
1025 LAUREL OAK RD.
VOORHEES, N.J. 08043

     *On behalf of Defendant*

**HILLMAN**, District Judge

Pending before the Court are Plaintiff Champion Painting Specialty Services Corp.'s ("Champion") motion for a preliminary injunction, (ECF 20), and appeal of a magistrate judge's decision, (ECF 91), and Defendant Delaware River Port Authority of the Commonwealth of Pennsylvania and the State of New Jersey's ("DRPA") motion for summary judgment, (ECF 87).  For the reasons expressed below, the Court will affirm the magistrate judge's decision and deny the appeal, grant DRPA's motion for summary judgment, and deny Champion's motion for a preliminary injunction as moot.

## I.   Background

Champion is a Florida corporation with a principal place of business in Fort Lauderdale, Florida that specializes in the rigging, blasting, and painting of large bridges and other structures.  (ECF 18 at ¶¶ 3-4).  DRPA is a public entity principally based in Camden, New Jersey, created as an interstate compact, and authorized by Congress that develops and maintains bridges and port facilities between New Jersey and Pennsylvania.  (Id. at ¶ 5).  Corcon, Inc. ("Corcon") is an Ohio corporation with a principal place of business in Lowellville, Ohio.  (Id. at ¶ 8).

This dispute arises out of the competitive bidding process for DRPA Contract No. CB-32-2016 Commodore Barry Bridge Painting

- Phase 3, the first two phases of which were performed by Corcon. (Id. at ¶¶ 1, 8).[1]  On or about January 15, 2020, DRPA advertised a Request for Contractor Qualifications ("RFQ") for Phase 3 on its procurement tool, Ariba, and contractors registered and opted in to participate and receive related information. (Id. at ¶¶ 13-14).  The RFQ included a qualification that read "[c]ompletion or substantial completion as a prime or general contractor of at least three (3) contracts that included the painting of long-span cantilevered truss structures within a tightly constrained and highly utilized facility, where the structure remains operational." (Id. at ¶ 15).  On February 14, 2020, DRPA's Contracting Officer, Amy Ash, provided clarifications to all those registered through Ariba, including to a question that asked "[i]s a contractor permitted to use subcontractors on their team to meet the experience requirements in Section IV, Item No. (A)(1)," to which Ash responded that subcontractors could be used to meet the experience requirement. (Id. at ¶ 16).

DRPA discontinued the RFQ process[2] and, on September 15,

---

[1] Champion notes that Phase 2 of the project also led to a legal dispute after the apparent low bidder was not awarded the contract.  (ECF 18 at ¶ 7); see also Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth., 853 F.3d 671 (3d Cir. 2017); Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth., 208 F. Supp. 3d 607 (D.N.J. Sept. 23, 2016).

[2] The record shows that two RFQs were issued, (ECF 1-25; ECF 1-

2020, published an Invitation for Bids ("IFB") for Phase 3 that
included an experience requirement for work on "long span
bridges" that differed from the RFQ process. (Id. at ¶¶ 18-19).
Question 2 of Section SP. 33 – Contractor's Qualifications ("SP.
33") read "[h]as Contractor completed (as a prime or general
contractor) at least three (3) contracts that include blast
cleaning and painting of long span bridges over navigable
waterways?"  (Id. at ¶ 20).[3]  Corcon allegedly researched
Champion's prior bridge-painting contracts for the purpose of
lodging a successful bid protest if Champion submitted the
lowest bid.  (Id.).

Bids were opened on November 19, 2020 and four bids were
received, including Corcon at $94,635,451 – one percent less
than DRPA's engineering estimate – and Champion, the lowest, at
$91,184,762.15.  (Id. at ¶¶ 18, 22-23).

Pursuant to Section A.15.1.2 of the IFB, bid protests were

---

26), and withdrawn purportedly for lack of sufficient pools of
qualified contractors, (ECF 87-3 at ¶ 9, 11).  Champion has
challenged the reasoning given for the withdrawals, claiming
that the prequalification standards of RFQ-1 were prohibitively
restrictive.  (ECF 96-1 at ¶ 9, 11).

[3] In its opposition to summary judgment, Champion argues that the
IFB otherwise contemplated the use of subcontractors to meet
qualification requirements with a question in a separate portion
that asked "[d]oes the firm have all technical qualifications
and resources, including equipment, personnel and financial
resources, to perform the referenced contract, or will it obtain
same through the use of qualified, responsible subcontractors?"
(ECF 96 at 12, 33-34; see also ECF 18-4 at 21).

to be filed within seven days of the date in which the protestor knew or should have known of the alleged irregularity.  (Id. at ¶ 28).  David Hatherhill of Corcon emailed DRPA's chief engineer, Michael Venuto, on December 4, 2020 alleging that Champion failed to satisfy SP. 33's experience requirement.  (Id. at ¶ 25).  Hatherhill's email violated the IFB's point-of-contact rule requiring that all communications regarding Phase 3 be directed to Ash.  (Id. at ¶ 26).  The rule stated, in part, that "[a]ny violation of this condition may be cause for the DRPA to reject the offending Bid or rescind the contract award."  (Id.).  Ash sent a letter to Champion on December 7, 2020 requesting additional information showing compliance with SP. 33 and, on December 15, 2020, a qualifications hearing was held.  (Id. at ¶¶ 27-28).

Corcon sent a letter purporting to be a formal notice of bid protest on December 23, 2020, again citing Question 2 of SP. 33.  (Id. at ¶ 29).  Despite the apparent untimeliness of the protest and the earlier email's violation of the point-of-contact rule, DRPA's Operations and Maintenance Committee ("O&M"), decided to stay the awarding of the contract to Champion in light of the protest letter.  (Id. at ¶ 30).  O&M sought evaluations of Champion's qualifications from Venuto and an independent consultant, AECOM.  (Id. at ¶ 31).  AECOM sent a letter to Venuto on January 26, 2021 confirming Champion's

qualifications and Venuto likewise concluded that Champion was qualified.  (Id. at ¶¶ 32-33).[4]  DRPA's general counsel thereafter sent a letter to Corcon's counsel on February 10, 2021 stating that the bid protest was both untimely and unsuccessful on the merits. (Id. at ¶ 34).  Corcon appealed. (Id. at ¶ 36).

O&M met virtually on April 1, 2021 to consider Corcon's bid protest appeal and adjourned to executive session – which was unrecorded and for which notes were not kept.  (Id. at ¶ 38). Following executive session, O&M decided to reject all bids. (Id.).  O&M followed with an April 5, 2021 memorandum stating that the reason for its decision was to avoid confusion as to necessary qualifications, not only between Champion and Corcon, but also potential bidders who may have otherwise participated. (Id. at ¶ 39)  Champion alleges that this decision was arbitrary and capricious because (a) any reasonable interpretation of the IFB would read into the provisions that serving as a "prime painting contractor" would satisfy relevant

---

[4] In the statement of facts accompanying its motion, DRPA states that AECOM concluded that Champion did not satisfy SP. 33's experience requirement itself, but rather did so when considered with its associated subcontractor.  (ECF 87-3 at ¶ 41). Champion, in its statement of facts, denies this assertion as stated.  (ECF 96-1 at ¶ 41).  A review of the record shows that AECOM concluded that Champion did not meet the experience requirement of SP. 33 itself, but rather did so when its relevant experience was combined with its subcontractor's.  (ECF 18-13 at 7).

qualification requirements; (b) the qualifications themselves served no legitimate purpose and their inclusion in the IFB were arbitrary, capricious, and unreasonable; (c) any contractor interested in the project would have been privy to information available on Ariba;[5] and (d) to the extent that there was remaining ambiguity, interested contractors were free to seek clarification.  (Id.).

Corcon filed a four-count complaint against DRPA on April 23, 2021.  (ECF 1).  Champion followed with a motion to intervene, (ECF 14), and an intervenor complaint, claiming that the terms of the IFB and the public interest demanded that Champion be awarded the Phase 3 contract and that DRPA's consideration of Corcon's bid protest and subsequent decision to reject all bids and rebid were arbitrary, capricious, and unreasonable.  (ECF 18 at ¶¶ 43-48).  Champion alleged that it suffered damages as a result of DRPA's actions, including lost opportunities to bid on other projects while its financial resources were committed to Phase 3 during the period between the opening of bids and O&M's decision to reject and rebid. (Id. at ¶ 41).  The intervenor complaint requested relief

_____

[5] Deposition testimony contradicts this assertion made in Champion's complaint as, once RFQ-1 and RFQ-2 were withdrawn, related information was not linked to the IFB.  (Mosback Dep. Tr. at 53:18 to 54:6).  Champion, in its statement of facts, does not dispute that information relating to RFQ-1 and RFQ-2 was no longer available on Ariba, but disputes that the information was not otherwise available.  (ECF 96-1 at ¶ 14).

including preliminary and permanent injunctions prohibiting DRPA
from rejecting Champion's bid, a requirement that DRPA award the
contract to Champion, disqualification of Corcon's bid for Phase
3 and, if rebidding is deemed to be appropriate, an enjoinment
prohibiting Corcon from submitting a new bid.  (Id. at p. 18).
That same day, Champion filed a motion for a preliminary
injunction seeking similar relief.  (ECF 20; ECF 21).  The Court
ultimately granted Champion's motion to intervene.  (ECF 43; ECF
44).

Corcon filed a notice of voluntary dismissal on July 1,
2021, (ECF 48), which Champion moved to strike, (ECF 51; ECF
52).  On September 3, 2021, the Court denied Champion's motion
to strike and ordered the Clerk to proceed with Corcon's notice
of voluntary dismissal and amend the docket to show Champion as
the plaintiff as opposed to the intervenor plaintiff.  (ECF 55
at 5-6).

Champion and DRPA proceeded to discovery.  Following a
January 10, 2022 discovery hearing and status conference,
Magistrate Judge Sharon A. King entered an amended scheduling
order directing the parties to meet and confer with respect to
Champion's proposed depositions of DRPA commissioners.  (ECF
72).  A week later, Champion filed a letter brief seeking
rejection of DRPA's contentions that depositions of O&M members
were precluded by various privileges.  (ECF 73).  DRPA responded

by seeking a protective order precluding the depositions of commissioners and staff members with respect to information protected by the deliberative-process, attorney-client, and attorney-work-product privileges.  (ECF 74).

Following oral argument and in-camera review of an executive summary regarding the bid protest prepared by DRPA's counsel, Judge King held in an April 25, 2022 opinion that the written and oral communications shared between O&M members, DRPA staff, and counsel during the April 1, 2021 executive session were protected by the attorney-client privilege and that the privilege was not waived.  (ECF 88 at 1-2, 6).  Judge King granted DRPA's request for a protective order precluding the depositions of O&M members and prohibiting discovery of the legal memorandum provided to O&M during executive session, further concluding that the facts underlying O&M's decision were disclosed in its April 5, 2021 written decision.  (Id. at 7).  Because Judge King concluded that the information sought was protected by the attorney-client privilege, she declined to address the potential applicability of the Morgan doctrine, deliberative-process privilege, and attorney-work-product doctrine.  (Id.).  Champion appealed.  (ECF 91).

Separately, DRPA moved for summary judgment on April 14, 2022, (ECF 87), which Champion opposed, (ECF 96), and DRPA replied, (ECF 98).

## II. Jurisdiction

The Court has jurisdiction over this matter as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).

## III. Appeal of Judge King's Discovery Decision

Pursuant to Local Civil Rule 72.1, a party may appeal a magistrate judge's non-dispositive decision within fourteen days of determination, and the magistrate judge's order – or a portion thereof – is to be set aside upon a finding that it was clearly erroneous or contrary to law.  L. Civ. R. 72.1(c)(1)(A); see also 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a)  ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").

The burden of demonstrating that the order was clearly erroneous or contrary to law falls on the party who has filed the notice of appeal.  Travelers Indem. Co. v. Dammann & Co., Inc., 592 F. Supp. 2d 752, 758-59 (D.N.J. Dec. 22, 2008) (citing Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. Nov. 18, 2004)).  "[C]learly erroneous" refers to "when although there is evidence to support it, the reviewing court on the entire

10

evidence is left with the definite and firm conviction that a mistake has been committed," id. at 759 (quoting Dome Petroleum Ltd. v. Emps. Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. May 4, 1990)), while "[a] ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law," id. (citing Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. Dec. 28, 1998)).

"Even if the Court might have decided the matter differently, the reviewing court will not reverse the Magistrate Judge's decision unless it satisfies the clearly erroneous standard." Alexander v. Holguin, No. 15-1965, 2017 WL 3317297, at *2 (D.N.J. Aug. 3, 2017); see also Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. Feb. 14, 2000) ("A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review.").

A magistrate judge's order regarding a discovery dispute is non-dispositive and is reviewed for abuse of discretion. Allen v. Banner Life Ins. Co., 340 F.R.D. 232, 236 (D.N.J. Jan. 4, 2022). This more deferential standard is appropriate when the magistrate judge has developed a thorough knowledge of the case or when review is of a matter in the direct purview of the magistrate judge, such as discovery. See Harrington v. Bergen Cnty., No. 14-5764, 2017 WL 4387373, at *1 (D.N.J. Oct. 3,

2017).

Separately, the attorney-client privilege protects confidential communications between attorneys and clients to "encourage full and frank communication between attorneys and their clients." Gloucester Twp. Hous. Auth. v. Franklin Square Assocs., 38 F. Supp. 3d 492, 496 (D.N.J. Aug. 12, 2014) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). The privilege applies when (1) the asserted holder of the privilege is or sought to be a client; (2) the communication was made to "a member of the bar of a court, or his or her subordinate, and . . . in connection with this communication is acting as a lawyer"; (3) the communication relates to facts of which the attorney was informed by the client, outside the presence of strangers, and for the purpose of or securing a legal opinion, legal services, or assistance in a legal proceeding and not a crime or tort; and (4) the privilege has been asserted and not waived. Id. (quoting Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994)). Relevant communications must be for legal, as opposed to business, purposes and, even when the privilege applies, it extends "only to the communications themselves, not the underlying information communicated." Wachtel v. Health Net, Inc., 482 F.3d 225, 237-38 (3d Cir. 2007) (citing Upjohn, 449 U.S. at 395)).

The Court has reviewed the record, including Judge King's opinion, O&M's April 5, 2021 written decision, the parties' briefing, and the February 18, 2022 hearing before Judge King, and concludes that Judge King did not abuse her discretion in denying Champion's application and granting DRPA's requested protective order and will therefore affirm.

In its briefing, Champion asserts that Judge King's conclusion was "extreme" because O&M's purpose was to compare bids, communication was "primarily for a business purpose," and that a privileged executive session does not "absolve [DRPA] from the obligation to provide a coherent and reasonable explanation for its exercise of discretion." (ECF 92 at 21, 26). However, during the hearing, the bid and protest processes handled by DRPA staff were distinguished from O&M's task of reviewing the appeal. (ECF 97 at 13:4-10; 46:15-22). In that review, according to DRPA's counsel, apparent confusion as to the IFB's experience requirement led O&M to determine "that the best thing was to take a [m]ulligan." (Id. at 12:23). This same reasoning is reflected in O&M's written decision. (ECF 18-18). The Court therefore cannot conclude that Judge King abused her discretion by concluding that O&M entered executive session to receive legal advice, did receive legal advice, and that the relevant underlying facts were reflected in O&M's written decision. (ECF 88 at 6-7).

Champion further asserts that the attorney-client privilege was waived by the presence of individuals such as the director of procurement and chief engineer – who were not part of O&M's decision-making process. (ECF 92 at 26-28). A review of the February 18, 2022 hearing shows that Upjohn and the subject of waiver were discussed by both parties as well as the role and relevant importance – or lack thereof – of the individuals present during executive session. Judge King concluded, with the information presented, that the presence of these individuals did not lead to a waiver of the attorney-client privilege. (ECF 88 at 6). The Court cannot find that Judge King abused her discretion in this regard.

In sum, Judge King heard oral argument, conducted an in-camera review of an executive summary, and developed a knowledge of the case in an area directly within her purview. See Harrington, 2017 WL 4387373, at *1. The Court finds that Judge King's discretion is entitled to deference and, upon review of the record, the Court holds that Judge King did not abuse that discretion. See Allen, 340 F.R.D. at 236.

**IV. Summary Judgment**

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

14

Civ. P. 56(a).  "A dispute is genuine 'if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.'"  SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04
(3d Cir. 2022) (quoting Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)).  "[F]or a factual dispute to be material,
its resolution must have the potential to affect the outcome of
the suit."  Id. at 203 (citing Anderson, 477 U.S. at 248).

If a movant successfully identifies the absence of genuine
issues of material fact, the burden then shifts to the nonmovant
"to go beyond the pleadings and 'come forward with "specific
facts showing that there is a genuine issue for trial."'"
Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986)).  Determinations are to be made by construing all
evidence in the light most favorable to the nonmovant.  Id.
(citing United States v. Diebold, Inc., 369 U.S. 654, 655
(1962)).

"[R]eview of an agency's procurement decision 'is extremely
limited in scope,'" and, in recognition of the agency's relevant
expertise, district courts are not to substitute the agency's
judgment for its own.  Alpha Painting & Constr. Co. Inc., 853
F.3d at 683 (quoting Princeton Combustion Rsch. Lab'ys, Inc. v.
McCarthy, 674 F.2d 1016, 1021 (3d Cir. 1982)).  Though it must
be careful not to "shirk" its judicial duty, "a district court

15

may not overturn a procurement decision 'unless the aggrieved
bidder demonstrates that there was no rational basis for the
agency's decision.'"  Id. (quoting Sea-Land Servs., Inc. v.
Brown, 600 F.2d 429, 434 (3d Cir. 1979)).

Champion, in its opposition to summary judgment, argues
that a reasonable factfinder could find that the bid process was
manipulated to favor Corcon, the requirements of SP. 33 did not
meet the needs of the project, DRPA abused its discretion by
considering Corcon's untimely appeal, and DRPA has not met its
burden in demonstrating that no genuine issues of material fact
exist with respect to the rationality of its decision to reject
all bids and rebid the project.  (ECF 96 at 28-39).  The Court
disagrees.

As Champion's intervenor complaint correctly notes, Phase 2
of the Commodore Barry Bridge project, too, resulted in legal
action.  (ECF 18 at ¶ 7).  The Court finds this previous case
instructive both in legal principles and relevant context.  The
prior action involved a preliminary injunction relating to the
rejection of Alpha Painting & Construction Company, Inc.'s
("Alpha") apparent low bid following a six-week undocumented
process in which Alpha was determined to be "not responsible"
and a miscalculation in Corcon's bid was corrected, resulting in
it being the lowest bidder.  Alpha Painting & Constr. Co. Inc.,
208 F. Supp. 3d at 611.  Following three days of testimony, the

Court concluded that the purported reasons for finding Alpha "not responsible" – lack of OSHA 300 forms and EMF factors – were not actually important to DRPA, could have easily been rectified, and did not bear on Alpha's actual safety record. Id. at 615-16, 618-19.  Further, the Court determined that Corcon was treated more favorably than Alpha as it was permitted, as Alpha was not, to supplement its bid and DRPA modified Corcon's bid in its favor.  Id. at 620-22.  The Court concluded that DRPA arbitrarily and capriciously awarded the contract to Corcon, enjoined DRPA from awarding the contract to Corcon, and directed that the contract be awarded to Alpha.  Id. at 627.

The Third Circuit Court of Appeals agreed with the Court's determination that DRPA acted irrationally in the awarding of the bid.  Alpha Painting & Constr. Co. Inc., 853 F.3d at 686-87. The Circuit Court departed, however, with respect to remedy – concluding that it was inappropriate to direct the awarding of the contract to Alpha when it was not clear that Alpha would have been awarded the contract "but for" the illegal conduct and, instead, Alpha should have been returned to competition to evaluate its responsibility as a contractor.  Id. at 689-90.  On remand, the Court, relying in part on DRPA rules permitting the

cancellation of a contract and creation of a new IFB,[6] issued a
modified injunction to cancel Phase 2 and issue a new IFB.
Alpha Painting & Constr. Co. Inc., No. 1:16-cv-05141, 2017 WL
3437781, at *5-6 (D.N.J. Aug. 10, 2017).

Against this contextual backdrop, the Court cannot find
that O&M was without a rational basis to reject all bids and
rebid the project.  Presented with arguments asserting
incompatible interpretations of the experience requirement, O&M
concluded that confusion tainted the bidding process and that
fairness dictated that all bids were to be rejected, and the
project rebid.  (ECF 18-18 at 1-2).  O&M concurred with AECOM's
conclusion that Champion did not – by itself – satisfy the IFB's
experience requirement, but ultimately departed by determining
that the parties were not adequately informed of the necessary
qualifications – and who was permitted to satisfy them – and
that any prior clarifications provided during the RFQ process
should not have been relied on unless expressly referenced or
incorporated in the IFB.  (Id. at 2).

DRPA notes in its supporting brief that the Court concluded
that rebidding was "fair and equitable" in response to the legal
action accompanying Phase 2 of the project.  (ECF 87-2 at 19, 22
(quoting Alpha Painting & Constr. Co. Inc., 2017 WL 3437781, at

---

[6] As DRPA notes in its reply brief, (ECF 98 at 9), the DRPA
reserved the right within the IFB "to reject any and all Bids
for any reason whatsoever," (ECF 18-4 at 9).

*1, 5)).  The Court cannot conclude following its decision as to
Phase 2 that O&M, faced with the increasing likelihood of
history repeating itself, was unreasonable in resolving this
controversy with the same remedy previously chosen by the Court.

Likewise, the Court cannot find that DRPA acted
irrationally with respect to the consideration, and ultimate
denial, of Corcon's bid protest.  Champion, relying on cases
such as Amazon Web Services, Inc. v. United States, 113 Fed. Cl.
102, 113-15 (2013), contends that Corcon's bid protest "was
clearly untimely, both because it was filed beyond the mandatory
seven-day deadline and because it was based on an argument
Corcon was required to raise before the bids were opened"
because it concerned ambiguity in the bid process itself.  (ECF
96 at 34-36).  This characterization does not match Hatherill's
December 4, 2020 email – which asserted Corcon's belief that
Champion was not qualified, not that there was ambiguity in the
bid process, and that that belief was based on research
conducted "since" bids were opened on November 19, 2020.  (ECF
18-7).  The IFB, as cited, required that protests be filed
within seven days of when the protester "knew or should have
known of the facts giving rise to the protest."  (ECF 18-4 at
10).

The subsequent December 23, 2020 letter from Corcon's
counsel also focused on Champion's qualifications, (ECF 18-10),

and DRPA rejected the protest both on the merits and as untimely, (ECF 18-15). The IFB provided Corcon with an opportunity to appeal following this denial. (ECF 18-4 at 11; ECF 18-15 at 2). The Court reads O&M's decision to ultimately rebid the project, not as selecting the position of either side on the merits, but rather as identifying an apparent flaw in the bid process and an associated remedy. For the reasons described above, the Court cannot find that DRPA was without a rational basis in so deciding following the Court's decision in Phase 2.

Finally, Champion challenges how and whether the experience requirement of SP. 33 served the needs of the project. (ECF 96 at 30). In the context of prequalifying bidders, deposition testimony presented indicates that Phase 3 of the project was complex due to its location at the center of the bridge – rather than near land, the size and shape of the bridge, and strong winds. (Jacurak Dep. Tr. 22:17 to 23:23). Though Champion does not seem to dispute why the project was complex, it challenges how the language chosen for Question 2 of SP. 33 met those complexities, especially given the original experience requirement's closer relation to engineering recommendations. (ECF 96 at 30). "Where a procurement decision requires an agency to assess an offeror's qualifications to perform a contract, our review is 'especially deferential.'" See J.A. Jones Mgmt. Servs. v. Fed. Aviation Admin., 225 F.3d 761, 765

(D.C. Cir. 2000) (quoting Iceland S.S. Co., Ltd.-Eimskip v. U.S. Dep't of the Army, 201 F.3d 451, 461 (D.C. Cir. 2000)).  Here, the Court is unwilling to substitute DRPA's judgment for its own in determining how a contractor's qualifications could best meet the needs of the project.

More significantly, Champion contends that "a factfinder could reasonably conclude that [DRPA] included this [experience] requirement in an effort to manipulate the bidding process to favor Corcon."  (ECF 96 at 28).  The Court takes this allegation seriously, particularly given its finding with respect to Phase 2 that "DRPA went out of its way to shepherd the Corcon bid through the process."  See Alpha Painting & Constr. Co. Inc., 208 F. Supp. 3d at 620.  Significantly, however, the Court notes that, after opening the submitted bids, DRPA discovered that only Corcon completed the SP. 33 form as part of its bid and, rather than disqualifying Champion as non-responsive, DRPA elected to provide Champion with an opportunity to complete SP. 33.  (ECF 87-3 at ¶¶ 28-30; ECF 96-1 at ¶¶ 28-30).  The Court previously noted the difference between non-responsible and non-responsive as to Phase 2 and recognized the ability to reject a bid for the latter.  See Alpha Painting & Constr. Co. Inc., 208 F. Supp. 3d at 619.  The Court therefore disagrees, with these facts and context in mind, that a reasonable factfinder could conclude that DRPA tailored the bid process to favor Corcon and

then, when presented with an opportunity to disqualify all other bidders and award the contract to Corcon, decided to snatch defeat from the jaws of victory.

The Court will therefore grant DRPA's motion for summary judgment, cognizant that rebidding following the opening of bids risks placing prior bidders at a competitive disadvantage. The Court finds, however, that the passage of time has reduced this risk. Furthermore, because the Court will grant DRPA's motion for summary judgment, Champion's motion for a preliminary injunction will be denied as moot. See Buckingham Twp. v. United States, No. 97-6761, 1998 WL 19479, at *9 (E.D. Pa. Jan. 16, 1998).

**V. Conclusion**

For the reasons stated above, Judge King's decision will be affirmed and the appeal, (ECF 91) will be denied, and DRPA's motion for summary judgment, (ECF 87), will be granted. Because the Court will grant DRPA's motion for summary judgment, Champion's motion for a preliminary injunction, (ECF 20), will be denied as moot.

An Order consistent with this Opinion will be entered.


Date: February 28, 2023          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.